UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JAMES W. MCGLOTHLIN,

    Plaintiff,

v.                      Case No: 2:17-cv-519-FtM-99MRM

KEVIN N. HENNELLY,

    Defendant.

## OPINION AND ORDER

This matter comes before the Court on defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Doc. #17) filed on November 9, 2017. Defendant submitted his affidavit in support of the motion. (Doc. #17-2.) Plaintiff filed a Response in Opposition (Doc. #22) on November 29, 2017. For the reasons set forth below, the motion is granted with leave to amend the Complaint.

**I.**

This is an action for defamation and libel based on two statements allegedly published by defendant about plaintiff on the social media website, www.facebook.com ("Facebook"). The Complaint (Doc. #1) alleges two state law claims: (1) defamation/libel[1], and (2) injunctive relief to enjoin defendant

---

[1] Although not pled as a separate count, plaintiff alternatively seeks damages for defamation and libel *per se*. (Doc. #1, ¶ 20.)

from making and/or publishing any other false and defamatory statements (Count II).

Plaintiff James McGlothlin (plaintiff or McGlothlin), a Florida citizen, is a businessman and the founding member of The United Company, which is the parent company of Scratch Golf, LLC. (Doc. #1, ¶¶ 1-2.)  Scratch Golf owns real property in Beaufort County, South Carolina, operated and commonly known as the Hilton Head National Golf Course (the Property).  (Id. at ¶ 7.)  In or around July 2016, Scratch Golf submitted an application to Beaufort County to amend the zoning of the Property.  (Id. at ¶8.)

On May 14, 2017, defendant Kevin N. Hennelly (defendant or Hennelly), a South Carolina citizen, published the first Facebook post, criticizing Scratch Golf's rezoning application and the Property, stating that McGlothlin was a "crony capitalist" who would "break every rule in the book to get a government favor or handout."  (Doc. #7-1.)  The post also stated that plaintiff was a "crook."  (Id.)  On May 22, 2017, the zoning application was denied.  (Id. at ¶ 10.)  Plaintiff does not allege that the application was denied as a result of defendant's actions.

On May 23, 2017, Hennelly published the second allegedly defamatory statement on Facebook, stating that plaintiff was "up to [his] eyeballs in the recent scandals in Virginia with the Governor and his wife.  McGlothin gave the Governors [sic] wife a no show job at the heart of the ethical and criminal activity."

(Doc. #4-1.) Plaintiff alleges that the scandal involving the Governor and his wife was highly publicized. (Doc. #1, ¶13.)

Plaintiff alleges general damages; actual damages, including injury to his reputation; mental suffering, anguish, and public humiliation; and punitive damages. (Doc. #1, ¶¶ 19-21.) Plaintiff further alleges that defendant is not only liable for the initial publication of the two statements, but also for each subsequent republication, as separate offenses. (Id. at ¶ 22.)

## II.

Hennelly moves to dismiss the Complaint for lack of personal jurisdiction and improper venue. Plaintiff opposes both aspects of the motion.

### *Personal Jurisdiction*

When ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), the Court must conduct a "two-step inquiry when determining whether the exercise of personal jurisdiction over a nonresident defendant is proper." Thomas v. Brown, 504 F. App'x 845, 847 (11th Cir. 2013) (citing Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 421 F.3d 1162, 1166 (11th Cir. 2005)). The Court first determines whether defendant's activities satisfy the Florida long-arm statute, and if so, whether the extension of jurisdiction comports with the due process requirements of the Fourteenth Amendment of the United States Constitution. See Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264,

1269 (11th Cir. 2002). "A federal district court in Florida may exercise personal jurisdiction over a nonresident defendant to the same extent that a Florida court may, so long as the exercise is consistent with federal due process requirements. If both Florida law and the United States Constitution permit, the federal district may exercise jurisdiction over the nonresident defendant." Licciardello v. Lovelady, 544 F.3d 1280, 1283 (11th Cir. 2008) (internal citation omitted). The plaintiff "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009). Defendant asserts that neither component of this standard is satisfied in this case.

***Florida Long Arm Statute***

In his response, plaintiff relies upon subsection (1)(a)(2) of the Florida "long arm" statute related to specific jurisdiction, which permits the exercise of jurisdiction over actions arising out of tortious acts committed within Florida. Fla. Stat. § 48.193(1)(a)(2). This portion states:

> **(1)(a)** A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
> . . .

**2.** Committing a tortious act within this state.

Id. Physical presence in Florida is not required to commit a tortious act in Florida. Internet Sols. Corp. v. Marshall, 39 So. 3d 1201, 1207 (Fla. 2010). Committing a tortious act within the state for purposes of the long arm statute can occur through the nonresident defendant's electronic, telephonic, or written communications into Florida, as long as the cause of action arises from the communications. Wendt v. Horowitz, 822 So. 2d 1252, 1260 (Fla. 2002); Internet Sols. Corp. v. Marshall, 557 F.3d 1293, 1296 (11th Cir. 2009). The Eleventh Circuit has recognized that "[f]or personal jurisdiction to attach under the 'tortious activity' provision of the Florida long-arm statute, the plaintiff must demonstrate that the non-resident defendant 'committed a substantial aspect of the alleged tort in Florida' by establishing that the activities in Florida 'w[ere] essential to the success of the tort.'" Cable/Home Commc'ns Corp. v. Network Productions, Inc., 902 F.2d 829, 857 (11th Cir. 1990) (quoting Williams Elec. Co. v. Honeywell, Inc., 854 F.2d 389, 394 (11th Cir. 1988)). The Eleventh Circuit has held that what is now Fla. Stat. § 48.193(1)(a)(2) "permits jurisdiction over the nonresident defendant who commits a tort outside of the state that causes injury inside the state." Licciardello, 544 F.3d at 1283 (citing Posner v. Essex Ins. Co., 178 F.3d 1209, 1216 (11th Cir. 1999)).

Defendant argues that personal jurisdiction fails because neither of the two Facebook posts were directed to individuals in Florida, nor sent to individuals in Florida, and the proposed rezoning involves property located in South Carolina. Defendant emphasizes that other than plaintiff's state of residence, there is no other mention of a connection to Florida in the Complaint. In response, plaintiff states that courts have found that a defendant commits a tortious act within the state for purposes of the long arm statute when making defamatory remarks on the Internet which is accessible in Florida. Plaintiff's only factual allegations in this regard state: "Upon information and belief, the internet website www.facebook.com was accessible in Florida at the time the statements were made and was accessed in this State." (Doc. #1, ¶ 12.)

Although the posting of defamatory material about a Florida resident on a website does not alone constitute the commission of a tortious act under Florida's long arm statute, "the posting of such that was both *accessible* in Florida and *accessed* in Florida constituted the commission of a tortious act of defamation within Florida" under the long arm statute. Marshall, 611 F.3d at 1370 (emphasis in original) (quoting Internet Sols., 39 So. 3d at 1203, 1214-15).

Here, the Complaint does not allege that the defamatory material was accessed in Florida. Rather, it alleges on

information and belief that the website Facebook was accessible in Florida at the time the statements were made and the website was accessed in Florida. Yet, the Florida Supreme Court and the Eleventh Circuit have determined that the *defamatory material* must be accessed in Florida to constitute the commission of a tortious act of defamation within Florida for purposes of the long arm statute. Marshall, 611 F.3d at 1370; Internet Sols., 39 So. 3d at 1203, 1214-15. The Complaint and exhibits are devoid of any information or allegations that the defamatory statements themselves were accessed in Florida. Thus, the Court concludes that plaintiff has not met his burden nor provided sufficient evidence to support a finding of personal jurisdiction under Florida's long arm statute. As a result, the Court need not determine whether exercising personal jurisdiction over Hennelly comports with Due Process, or whether dismissal for improper venue is proper. Plaintiff will be allowed to amend his Complaint.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Doc. #17) is **GRANTED** and the Complaint (Doc. #1) is **DISMISSED without prejudice** to filing an Amended Complaint within **FOURTEEN (14) DAYS** of this Opinion and Order.

**DONE and ORDERED** at Fort Myers, Florida, this  27th  day of December, 2017.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record